IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NATHANIEL PITTS,              :     CRIMINAL ACTION
                             :     NO. 10-703
        Petitioner,       :
                             :     CIVIL ACTION
    v.                      :     NO. 13-7593
                             :
UNITED STATES OF AMERICA,    :
                             :
        Respondent.       :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                August 17, 2015

I.   BACKGROUND AND PROCEDURAL HISTORY.......................... 2

II.  STANDARD OF REVIEW........................................ 7

III. DISCUSSION............................................... 8

      A.    Prosecutorial Misconduct............................ 8

      B.    Ineffective Assistance of Counsel.................. 10

          1.    Trial Counsel................................. 12

               a.   Failure to call Dominique Brower to
                   suppression hearing...................... 12

               b.   Failure to object to Confrontation
                   Clause violation and failure to
                   effectively cross-examine Officer Brady... 13

               c.   Failure to call Jessica Vazquez as a
                   witness................................. 16

               d.   Failure to object to all prosecutorial
                   misconduct and failure to request
                   directed curative instructions............ 17

                   i.   Improper questions................... 17

                   ii.  Asking Defendant whether other
                      witness was lying.................... 19

                   iii. Introducing false testimony during
                      rebuttal phase of trial.............. 21

                   iv.  Intentionally misstating evidence.... 23

              v.    Violation of Brady v. Maryland....... 26

              vi.  Cumulative errors.................... 28

      e.    Failure to object to "CSI" jury instruction............................... 29

      f.    Failure to object to Agent Oswaldo Toledo sitting at prosecution table and failure to seek an adverse instruction for intentional destruction of notes...... 31

      g.    Cumulative errors........................ 33

   2.    Appellate Counsel........................... 34

      a.    Failure to get reconsideration motion adjudicated.............................. 34

      b.    Failure to appeal all instances of prosecutorial misconduct.................. 35

      c.    Failure to appeal two-point enhancement for obstruction of justice............... 35

IV.   CERTIFICATE OF APPEALABILITY........................... 39

V.    CONCLUSION............................................. 39

Pro se Petitioner Nathaniel Pitts ("Pitts" or "Petitioner"), a federal prisoner, seeks habeas relief under 28 U.S.C. § 2255. Petitioner claims prosecutorial misconduct, in violation of his due process rights, as well as ineffective assistance of trial and appellate counsel, in violation of his Sixth Amendment rights. Each of these claims includes numerous subclaims which the Court will analyze individually. For the reasons set forth below, the Court will deny the motion without an evidentiary hearing.

## I.   BACKGROUND AND PROCEDURAL HISTORY

On October 27, 2010, a federal grand jury indicted Petitioner on the following five counts: (1) possession of

cocaine with intent to distribute, in violation of 21 U.S.C
§ 841(a)(1), (b)(1)(C); (2) possession of cocaine base ("crack")
with intent to distribute, in violation of 21 U.S.C.
§ 841(a)(1),(b)(1)(C); (3) possession of marijuana with intent
to distribute, in violation of 21 U.S.C. § 841(a)(1),(b)(1)(C);
(4) possession of a firearm in furtherance of a federal drug
trafficking crime, in violation of 18 U.S.C. § 924(c)(1); and
(5) possession of a firearm and ammunition by a convicted felon,
in violation of 18 U.S.C. § 922(g)(1). Indictment, ECF No. 8.

     Petitioner had been under surveillance by a joint task
force of DEA agents and police officers after a confidential
informant revealed that Petitioner was a drug dealer with secret
compartments installed in his car. Hr'g Tr. 19:18-21:12, Feb. 7,
2011, ECF No. 34. This task force was led by DEA Agent Officer
Oswaldo Toledo. Id. at 18:6-7. On September 13, 2010, law
enforcement agents observed Petitioner engage in an anti-
surveillance driving maneuver and meet a companion in an empty
parking lot behind a convenience store without ever entering the
building. Id. at 22:25-25:10. Agent Toledo ordered a stop on
Petitioner's vehicle while Petitioner's companion fled from the
police. Id. at 25:7-27:4.

     After Petitioner was detained by law enforcement and
informed that he was under investigation, Petitioner began
recording the vehicle stop on his cell phone. Trial Tr. 198:19-

199:10, June 7, 2011, ECF No. 79. Petitioner also placed a phone
call to a woman, Dominique Brower, who remained on the phone to
overhear Petitioner's arrest and the subsequent search of his
vehicle. Id. at 200:17-201:21. A K-9 search unit identified
narcotics within Petitioner's vehicle, leading law enforcement
to obtain a warrant and find a black briefcase containing
cocaine. Hr'g Tr. 101:14-15, Feb. 7, 2011; Mem. Op. 5-6 (Oct.
28, 2011), ECF No. 112. After Petitioner's arrest, law
enforcement executed a warrant to search Petitioner's home,
where they discovered crack, marijuana, $84,000 in cash, and a
loaded handgun under a coffee table. Mem. Op. 6 (Oct. 28, 2011).

On December 16, 2010, Petitioner filed a motion to
suppress the physical evidence found in his car and residence,
arguing that law enforcement lacked reasonable suspicion to
justify the initial stop or probable cause to warrant his
arrest. ECF Nos. 17, 26. During the suppression hearing, held on
February 7, 2011, no witnesses were called by Petitioner's
attorney, William T. Cannon, even though Petitioner had
indicated in an earlier motion that he intended to have
Dominique Brower testify that law enforcement agents had entered
his vehicle before authorization was given. On March 15, 2011,
Petitioner's motion to suppress was denied, and the Court found
that law enforcement officers had reasonable suspicion to
conduct the initial stop and had probable cause to make

4

Petitioner's subsequent arrest. ECF Nos. 37, 38. On May 5, 2011, Petitioner filed a motion to reopen the suppression hearing (ECF No. 44), but his motion was denied from the bench before trial began. Hr'g Tr. 23:12-16, June 2, 2011, ECF No. 76.

Beginning on June 3, 2011, Petitioner's case went to trial, again represented by attorney William Cannon. During the trial the Government called numerous DEA agents and law enforcement agents, including Agent Toledo, who sat at the prosecution's table and assisting it throughout the trial. Petitioner's defense relied heavily on Petitioner's own testimony in addition to the testimony of Dominique Brower, who defense counsel had failed to call at the hearing for Petitioner's motion to suppress. Petitioner's girlfriend, Jessica Vasquez, was a witness in the Government's case, although Petitioner's counsel did not re-call her to testify during Petitioner's defense. After a one-week trial, the jury found Petitioner guilty on all five charges. Trial Tr. 8:7-9:6, June 9, 2011, ECF No. 82.

On July 25, 2011, Petitioner filed post-trial motions, challenging the court's decision to deny his motion to suppress (ECF No. 94), which the Court denied on October 28, 2011 (ECF No. 113). Petitioner was sentenced on October 28, 2011, as follows: 126 months' imprisonment, six years' supervised

release, a $5,000 fine, and a $500 special assessment. ECF No. 115.

On November 10, 2011, Petitioner filed a pro se motion for reconsideration of post-conviction relief. ECF No. 119. Before the Court could consider Petitioner's motion, he filed on November 14, 2011, a pro se notice of appeal. ECF No. 120. Because Petitioner had filed a timely notice of appeal, the Court denied Petitioner's motion for reconsideration on the grounds that jurisdiction had divested from the District Court to the Court of Appeals. ECF No. 122.

Petitioner was represented on appeal by Robert Lynch, Esquire, who argued that the Court had erred in denying Petitioner's motion to suppress and that there was insufficient evidence to support his conviction for possessing a firearm in furtherance of his drug trafficking activity. On September 20, 2012, the Third Circuit denied Petitioner's appeal, affirming this Court's ruling in its entirety. ECF No. 130.

On October 15, 2012, Petitioner submitted another pro se filing with the Court to reopen his previously dismissed post-trial motions. ECF No. 131. Thereafter, on July 8, 2013, Petitioner filed a pro se motion, styled as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. ECF No. 132. On December 27, 2013, Petitioner filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.

6

ECF No. 136. On February 19, 2014, the Court denied Petitioner's motion to reopen and motion for summary judgment, but directed the Government to issue a response to Petitioner's § 2255 motion. ECF No. 139. The Government did so on March 21, 2014 (ECF No. 142), and Petitioner replied a month later (ECF No. 144).

On March 5, 2014, Petitioner filed a pro se notice of appeal of this Court's denial of his motions. ECF No. 140. The Third Circuit issued its judgment on October 27, 2014, affirming this Court's decision both to deny Petitioner's post-trial motions for lack of jurisdiction and to deny his motion for summary judgment. ECF No. 147. With all other motions resolved, Petitioner's § 2255 petition is ripe for disposition.

## II.   STANDARD OF REVIEW

A federal prisoner "claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). Such a prisoner may attack his sentence on any of the following grounds: (1) the sentence was imposed in violation of the Constitution or federal laws; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. Id. An evidentiary hearing on the merits of a

prisoner's claims is required unless it is clear from the record, viewed in the light most favorable to the petitioner, that he is not entitled to relief. § 2255(b). The Court is to construe a prisoner's pro se pleading liberally, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), granting cert. to 198 F. App'x 694 (10th Cir. 2006), but "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation," United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).

## III. DISCUSSION

A.   Prosecutorial Misconduct

Petitioner raises several claims of prosecutorial misconduct.[1] However, it appears that he did not object to any of these at trial or on direct appeal. Indeed, he effectively concedes this by bringing ineffective assistance of counsel

---

[1]     Petitioner alleges the following instances of prosecutorial misconduct:

> asking [Petitioner] improper questions about his prior drug use during cross-examination; improperly asking [Petitioner] to opine on the credibility of a previous witness; introducing false testimony during the rebuttal phase of the trial; intentionally misstating the evidence during his closing argument; and . . . violating his obligations under Brady v. Maryland, 373 U.S. 63 (1963), by withholding evidence that another person was responsible for the crimes [Petitioner] was charged with committing.

Gov't's Br. 10.

claims relating to trial counsel's failure to object to and appellate counsel's failure to appeal these very instances of prosecutorial misconduct. See Pet'r's Br. 6-7, 9, ECF No. 136.

According to the Supreme Court, "to obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default; and (2) 'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982); see also United States v. Pelullo, 399 F.3d 197, 223-24 (3d Cir. 2005) (applying Frady in affirming dismissal of § 2255 petition). "To establish 'cause' . . . , a defendant must show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim." Pelullo, 399 F.3d at 223 (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)) (internal quotation marks omitted). "Examples of external impediments . . . include interference by officials, a showing that the factual or legal basis for a claim was not reasonably available to counsel, and ineffective assistance of counsel." Id. (internal quotation marks omitted).

Petitioner offers no explanation for why he failed to raise these objections before the collateral attack stage.[2] In

---

[2]     Although it is likely that Petitioner would point to ineffective assistance of counsel as one reason, he has not made

his reply, Petitioner argues that "[a] [l]iberal reading of the entire petition can set out a claim of 'Actual Innocence' which is enough to overcome the procedural bar to this claim." Pet'r's Reply Br. 1, ECF No. 144. This is neither responsive to Frady nor correct and, under these circumstances, the Court finds that he has not made a showing of cause or prejudice sufficient to overcome the procedural bar. Therefore, this ground for relief under § 2255 fails.

B.    Ineffective Assistance of Counsel

A § 2255 petition can be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of habeas corpus," "[t]he principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that

---

this clear. Moreover, as will be shown in the discussion below, Petitioner cannot show prejudice with respect to his claims of prosecutorial misconduct. Even if the Court inferred that ineffective assistance of counsel satisfied the causation prong, Petitioner would still not be able to satisfy the prejudice prong.

(1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687.

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. The Court's "scrutiny of counsel's performance must be highly deferential." Id. at 689. Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Id. at 690. Next, the Court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To establish prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

The Court will consider each of Petitioner's ineffective assistance of counsel claims in turn, beginning with those related to his trial counsel.

    1.   <u>Trial Counsel</u>

        a.   <u>Failure to call Dominique Brower to suppression hearing</u>[3]

Petitioner argues that defense counsel was ineffective for failing to call Dominique Brower as a witness in his hearing on the motion to suppress. Pet'r's Br. 5. Petitioner had placed a phone call to Brower and left the phone in the car after his arrest, allowing Brower to overhear a law enforcement agent enter Petitioner's vehicle and make a phone call to the confidential informant. Gov't's Br. 13. Petitioner contends that Brower's testimony would have contradicted Agent Toledo's testimony that nobody entered the vehicle before the K-9 search unit arrived, proving that officers did enter the vehicle, despite Lt. MacCartney's order that nobody was to do so until the K-9 unit arrived. Pet'r's Reply Br. 1-2. Even though defense counsel stated that it was a "lapse of judgment" to not call Brower as a witness, Pet'r's Reply Br. 1, this failure in no way prejudiced Petitioner.

The Court has already determined that law enforcement had probable cause to arrest Petitioner. Mem. Op. 29 (Oct. 28,

---

[3]     The titles for each of the ineffective assistance claims are taken from Petitioner's motion.

2011). Once probable cause had been established and an arrest was made, Agent Toledo was authorized to search the vehicle without a warrant because he had reason to believe that it contained evidence of the drug trafficking offense for which Petitioner was arrested. See Arizona v. Gant, 556 U.S. 332, 346 (2009). Because Agent Toledo was legally authorized to search Petitioner's vehicle, Brower's testimony confirming that Agent Toledo had entered the vehicle would not have altered the decision of the Court. Defense counsel's failure to call Brower as a witness had no effect on the result of the trial, and thus did not prejudice Petitioner in a manner that would have compromised fundamental fairness. Strickland, 466 U.S. at 497. Therefore, this ground for relief under § 2255 fails.

> b. Failure to object to Confrontation Clause violation and failure to effectively cross-examine Officer Brady

Petitioner argues that Officer Brady's testimony about information received from the confidential informant constituted testimonial hearsay that was introduced in violation of the Confrontation Clause, because he was denied the right to confront the informant. Pet'r's Br. 5-6. Officer Brady testified at trial that Petitioner was under law enforcement surveillance and that law enforcement officers needed to make a stop on his vehicle "based on information from a [confidential informant]."

13

Trial Tr. 114:17-21 June 3, 2011, ECF No. 77. Petitioner claims that this embedded statement about the informant's information was testimonial hearsay to which defense counsel should have objected. Pet'r's Br. 5. Hearsay is a statement that the declarant does not make at trial and that is offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Whether a statement is hearsay "frequently turns on the purpose for which it is offered." United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993). It is permissible for police officers to reveal out-of-court statements when they do so for the "limited purpose of establishing background for the officers' actions" rather than for establishing the truth of the matter asserted. Id. The informant's embedded statement in Officer Brady's testimony is not hearsay because this statement was given to establish the background which justified police surveillance of Petitioner, not to establish the truth of Petitioner's suspected role as a drug dealer.

In Sallins, the arresting officer revealed the contents of a police radio dispatch in his testimony-- specifically, "that there was . . . a black male dressed in all black with a gun on the 2500 block of North Franklin Street." 993 F.2d at 345-46. Although the Government argued that this out-of-court statement was included only to establish the background of the officer's actions, the court held that it was

14

impermissible hearsay because the officer could have established the background of his actions without revealing the contents of the dispatch. Id. at 346-47.

Here, Petitioner argues, applying Sallins, that "[i]f an officer can exp[]lain his actions by saying he acted upon information received, any further revelation of the contents of the information received is impermissible hearsay." Pet'r's Br. 2 (quoting Sallins, 993 F.2d at 344). In his testimony, Officer Brady did not reveal the contents of his conversation with the informant, but simply indicated that law enforcement's actions--surveying and requesting the stop on Petitioner's vehicle--were based on information received from the informant. Trial Tr. 114:17-21, June 3, 2011. This merely established the background of police action and, following Sallins, did not improperly reveal any content.[4] The confidential informant's embedded statement in Officer Brady's testimony cannot be viewed as

---

[4]     On cross-examination, Officer Brady testified as follows: "I told [Officer Donnelly] that we were following a possible drug deal based on information from a [confidential informant], that we would need a car stop." Trial Tr. 114:19-21, June 3, 2011. From this statement, it is unclear whether the confidential informant told Officer Brady that a possible drug deal was occurring, or if this represents information Officer Brady summarized and relayed to Officer Donnelly. In any event, this information is not nearly as suggestive as the content in the Sallins case, and is clearly within the bounds of "establishing background for the officers' actions." Sallins, 993 F.2d at 346.

testimonial hearsay that would warrant an objectionable Confrontation Clause violation.

For these reasons, defense counsel's failure to raise an unsuccessful Confrontation Clause claim certainly did not fall below professional norms, nor was it prejudicial to Petitioner. Therefore, this claim for relief under § 2255 fails.

          c.   <u>Failure to call Jessica Vazquez as a witness</u>

Petitioner argues that defense counsel was ineffective for failing to re-call Jessica Vazquez as a witness during the defense's case. Vasquez, Petitioner's partner who had once lived at Petitioner's home, found the keys to Petitioner's house near the backdoor and discovered they were bent as if "they were used to force open a lock they did not belong to." Pet'r's Br. Ex. Vasquez Aff. Petitioner claims that Vasquez would have testified that the bent keys she found at Petitioner's home contradict Agent Toledo's testimony that the keys were in his possession, and that this testimony would have "changed the outcome of the entire proceeding" had it been included. Pet'r's Br. 6.

Petitioner has failed to show how the outcome of the case would have changed by the inclusion of Vasquez's testimony. The possession of the keys was not a critical factual dispute at trial. Ultimately, the dispute over the possession of the keys

was a relatively minor matter with no substantial bearing on the evidence presented to convict Petitioner.

Furthermore, Petitioner claims that Vasquez would have testified that the holster found in Petitioner's bedroom belonged to a taser and not to the gun found in Petitioner's living room. Id. at 6. Petitioner contends that this testimony would have had the effect on the jury of precluding the prosecution's ability, using the holster, to prove that the gun was Petitioner's. Id. However, Petitioner was not able to produce the taser alleged by Vasquez and the holster was described at trial to have securely fit the gun. Trial Tr. 125:5-14, June 6, 2011, ECF No. 78. Without any corroborating evidence that she or Petitioner had ever actually owned a taser, Vasquez's testimony would not have been helpful to Petitioner. Therefore, because the testimony was not reasonably likely to effect a different trial outcome, Petitioner has not shown prejudice under Strickland. See 466 U.S. at 694. It follows that this claim for relief under § 2255 must fail.

> d.  Failure to object to all prosecutorial misconduct and failure to request directed curative instructions

> i.  Improper questions

Petitioner claims that the prosecution violated a court order preventing the introduction of past convictions by

questioning whether he had used drugs and, therefore, defense counsel was ineffective by failing to object to this inappropriate line of questioning. Pet'r's Br. 1. Apparently, Petitioner claims that this prejudiced him because his supposed familiarity with or prior use of drugs suggested to the jury that he was a drug dealer or had committed a drug-related offense--thereby damaging his credibility. Id.

The Government explains that these questions did not ask Petitioner to reveal information about his past convictions, but were posed in order to identify whether Petitioner had used drugs and was intending to use the drugs that were found in his home and vehicle. Gov't's Br. 17. Questions related to Petitioner's drug use were necessary to establish whether the drugs in Petitioner's possession were for personal use or for dealing.

This line of questioning did not ask Petitioner about any past convictions and was not introduced to impeach or prejudice petitioner. While Petitioner claims that this line of questioning was improper because the drugs were not in his possession, the possession of the drugs and the purpose for which the drugs were possessed were both factual determinations that the jury was tasked with determining in order to decide Petitioner's guilt on counts one, two, and three. Trial Tr. 96:23-97:11, June 8, 2011, ECF No. 81. The prosecutor's

questions regarding Petitioner's drug use were relevant to these factual determinations and did not violate the Court's order against introducing past convictions.

Defense counsel's decision not to object to this line of questioning was within the bounds of reasonable trial strategy and the outcome of the trial would not have altered had counsel raised this objection. Therefore, this claim for relief under § 2255 fails.

### ii. Asking Defendant whether other witness was lying

In Petitioner's testimony he stated that the officer who stopped his vehicle, Officer Donnelly, pulled him over because "he got a call on police radio of somebody fitting the description of [his] vehicle smoking crack-cocaine." Trial Tr. 197:5-11, June 7, 2011. This detail was not included in Officer Donnelly's testimony and so the prosecutor asked Petitioner if Officer Donnelly had omitted this detail because he was either "lying or he just had a memory lapse." Id. at 197:12-22. Petitioner argues that, by asking him this question, the prosecution was impermissibly asking Petitioner to opine on the credibility of another witness, in violation of United States v. Harris, 471 F.3d 507 (3d Cir. 2006). Pet'r's Br. 3.

As the Harris court held, "asking one witness whether another is lying is inappropriate" because it requires the

19

witness to testify to something that he could not definitively
know and thus requires him to render an opinion. 471 F.3d at
511. While it is inappropriate for counsel to ask a witness
whether another witness is lying, it is also "often necessary on
cross-examination to focus a witness on the differences and
similarities between his testimony and that of another witness."
Id. at 512. The need to focus on these differences and
similarities, however, does not give a prosecutor license to
question a witness "as to the veracity of the other witness."
Id.; see also id. (suggesting that it may instead be appropriate
to ask "whether another [witness] was 'mistaken' or 'wrong'"
(citing United States v. Gaines, 170 F.3d 72, 81-82 (1st Cir.
1999))).

     Here, the prosecutor clearly asked Petitioner to opine
on the veracity of another witness's testimony--and he did so
using the disfavored word "lying." The Government's
characterization of the prosecutor's question as only "ask[ing]
to confirm that either one of them [i.e., Petitioner or the
other witness] was lying or one of them had a bad memory,"
Gov't's Br. 17, is unpersuasive. The prosecutor's question was
inappropriate.

     However, even though the prosecutor asked an
inappropriate question, Petitioner cannot show that defense
counsel's failure to object to the question prejudiced his

claim. In Harris, the prosecution asked the defendant whether police witnesses involved in his arrest had lied in their testimonies in order to convict him. 471 F.3d at 510. Even though the court found that this line of questioning to be impermissible, it nonetheless held that these questions, by themselves and without objection, were not likely to have "affected the outcome of the district court proceedings." Id. at 512 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)) (internal quotation marks omiited). Similarly, in United States v. Vitillo, 490 F.3d 314 (3d Cir. 2007), the Court held that impermissibly questioning the defendant whether law enforcement agents were lying in their testimonies did not prejudice the defendant, due to the overwhelming evidence against him. Id. at 326.

Similar to Harris, the prosecutor's inappropriate question could not have affected the outcome of the proceedings, given the quantum of evidence in this case. See Mem. Op. 29 (Oct. 28, 2011). Therefore, counsel's alleged error did not prejudice Petitioner, and this claim for relief under § 2255 fails.

### iii. Introducing false testimony during rebuttal phase of trial

Petitioner argues that his counsel at trial was ineffective by failing to object to false testimony given during

the prosecution's rebuttal. During rebuttal, Agent Toledo testified that it is a felony in the third degree under Pennsylvania state law to record a conversation without the other's consent. Trial Tr. 9:7-25, June 8, 2011. Petitioner argues that it is legal in Pennsylvania to record police officers when they are acting within an official capacity and do not have a reasonable expectation of privacy. See, e.g., Kelly v. Borough of Carlisle, 622 F.3d 248, 252 (3rd Cir. 2010); Commonwealth v. Henlen, 564 A.2d 905, 906 (Pa. 1989). Because it is sometimes legal to record police officers without their consent, Petitioner claims that "[t]he Government used expert testimony that it knew or had a duty to know was false" and therefore defense counsel was ineffective in his failure to object to such false testimony. Pet'r's Br. 3.

Petitioner was not prejudiced by defense counsel's actions because the statements made by Agent Toledo were not actually false. A witness bears false testimony when he states as fact something that is untrue. Agent Toledo was not testifying with respect to a fact; he was simply stating his opinion on what he believed Pennsylvania law to be regarding unconsented recordings. The correctness (or lack thereof) of Agent Toledo's legal opinion has no effect on whether his statement was false. Because the prosecution did not introduce false testimony, counsel's failure to object did not prejudice

Petitioner. Accordingly, this claim for relief under § 2255 must fail.

### iv.   Intentionally misstating evidence

Petitioner claims that the prosecution made numerous intentional misstatements of the evidence over the course of its closing argument and that defense counsel was ineffective in his failure to object to these misstatements.

The first alleged misstatement occurred when the prosecution said, "[T]here was no suggestion that the [confidential informant] had ever told Officer Toledo that Mr. Pitts had drugs in his car at that time." Trial Tr. 67:7-9, June 8, 2011. Agent Toledo had testified that the informant had given law enforcement information about the several vehicles that Petitioner owned and the secret compartments installed within those vehicles. Id. at 67:10-14. Petitioner claims that this was a misstatement of the evidence because Officer Brady had indicated in his testimony that the officers were following "a possible drug deal" based on information from the confidential informant Pet'r's Br. 3. Petitioner infers from this statement that the informant had actually told law enforcement that drugs were in Petitioner's vehicle and for that reason the prosecutor's statement must be false. Id. The Government affirms that the informant did not say that there were drugs in the car,

only that Petitioner "was a drug dealer who drove several cars with secret compartments." Gov't's Br. 18 n.8. Officer Brady's statement that they were investigating a "possible drug deal" corroborates Agent Toledo's testimony, but does not indicate that drugs were actually in the vehicle. Petitioner is incorrect to claim that this was a misstatement. Therefore, defense counsel was not ineffective for failing to object to the statement.

The second alleged misstatement occurred when the prosecution asked Petitioner to play the recording on Petitioner's cell phone, a recording of the law enforcement agents entering Petitioner's vehicle after he was stopped and subsequently arrested. Petitioner claims that this was a misstatement because Agent Toledo had testified that no recordings were found on the phone and, by asking Petitioner to play the recordings when they were not on the phone, Petitioner's credibility was damaged in the eyes of the jury. Pet'r's Br. 4.

This is not a misstatement of the evidence because Agent Toledo did not testify that the recordings were not on the cell phone, as Petitioner has alleged. During Agent Toledo's testimony he stated that he was aware that he had been recorded on Petitioner's cell phone, but neither he nor a technical expert were able to find the conversation on the cell phone.

Trial Tr. 34:7-35:11, June 7, 2011. Since Petitioner himself
testified to having recorded the conversation, it is not a
misstatement to have asked Petitioner if he was able to locate
the recording on the cell phone, even though Agent Toledo
testified that he was not able to find it. Because the
prosecution made no misstatement in this line of questioning,
defense counsel was not ineffective for failing to object to it.

      The third alleged misstatement occurred when the
prosecution stated, "Now, one thing [Petitioner] doesn't have,
he doesn't have an alarm system, . . . some sort of alarm system
where if a wire is tripped the police come." Trial Tr. 29:21-24,
June 8, 2011. Petitioner claims that this is a misstatement
because Jessica Vasquez had testified that they do have a
security system, but not a security system that was installed
through a security company. Pet'r's Br. 4. The purpose of the
prosecution's statement was to show that Petitioner did not have
a security system that would notify police of a home invasion,
"because he doesn't want police in his house." Trial Tr. 29:24-
25, June 8, 2011. The prosecution did not make a misstatement
because it was asserting that Petitioner did not have a security
system that was linked to the police, not that his home lacked a
security system altogether. The prosecution even acknowledged in
its argument that Petitioner's home had "high security
measures." Id. at 30:1. There was no misstatement made regarding

Petitioner's security system and defense counsel was not
ineffective for failing to object to it.

Petitioner's arguments notwithstanding, none of the
prosecutor's statements were misstatements of the evidence.
Therefore, Petitioner was not prejudiced by his attorney's
failure to object to these statements. Accordingly, this claim
for relief under § 2255 cannot proceed.

v. Violation of Brady v. Maryland

Petitioner claims that the Government withheld
evidence that Michael Green, the person Petitioner believes to
be the confidential informant, was responsible for the crimes
for which Petitioner was convicted. Under Brady v. Maryland, if
the prosecution withholds evidence from a trial that is
favorable to the defendant, then the defendant's due process
rights have been violated and a new trial is required. 373 U.S.
83, 87 (1963). In order to successfully prove a Brady violation,
the defendant must show that (1) the prosecution has suppressed
or withheld evidence, (2) which is favorable to the defendant,
and (3) material to the defense. United States v. Perdomo, 929
F.2d 967, 970 (3d Cir. 1991). Petitioner argues that by
withholding this evidence the Government has violated its
responsibility under Brady. The Government responded to these
claims by stating: "The government has charged a person named

26

Michael Green with drug trafficking (Criminal No. 13-10) but has no information . . . that this man (or anyone else for that matter) planted the drugs and gun that were found in Pitts's possession." Gov't's Br. 18 n.8.

While Petitioner claims that the Government has withheld evidence that would prove Michael Green's guilt as to Petitioner's charges, he fails to identify what the evidence is that the Government has withheld. The only evidence which Petitioner specifically points to is the Government's "failing to acknowledge that Michael Green was on the phone with [Agent] Toledo and that he had ample time to get to the house." Pet'r's Reply Br. 6. Petitioner contends that Agent Toledo had called Green while searching Petitioner's vehicle for the secret compartments and that Green supposedly had time to plant the drugs in Petitioner's home while Petitioner was detained by the police.

Critically, Petitioner has not pointed to any evidence that Green planted drugs in Petitioner's home, and certainly not to any evidence that the Government withheld such information. In fact, Petitioner has offered no evidence beyond speculation that anything other than Green's identity was withheld. Because there is no evidence of a Brady violation, Petitioner was in no way prejudiced for defense counsel's failure to raise this objection. Therefore, this claim for relief under § 2255 fails.

### vi.  <u>Cumulative errors</u>

Petitioner argues that even if none of his claims of prosecutorial misconduct rises to the level of reversible error, the combined errors collectively infected the trial with unfairness substantial enough that his due process rights were violated. Pet'r's Br. 5. However, even cumulatively, the alleged instances of prosecutorial misconduct do not reach a level at which they were reasonably likely to have altered the outcome of Petitioner's case. See <u>Strickland</u>, 466 U.S. at 694.

As discussed above, most of the alleged prosecutorial errors were not errors at all: the questions about Petitioner's past drug use, the elicitation of Agent Toledo's opinion on Pennsylvania law, the alleged misstatements of the evidence, or the alleged <u>Brady</u> violation. Therefore, whether viewed item-by-item or cumulatively, these alleged errors caused no prejudice to Petitioner's case. The only instance of prosecutor error occurred when Petitioner was asked whether another witness had lied or not. However, given the quantum of evidence in the case against Petitioner, this error alone could not have affected the outcome of the trial, and therefore did not prejudice Petitioner. Accumulating this error with the other alleged errors creates no residual effect of prejudice that is greater than the (negligible) prejudice ascribed to this error alone.

For this reason, Petitioner's claim for relief under § 2255 cannot succeed on this ground.

        e.   <u>Failure to object to "CSI" jury instruction</u>

        Petitioner argues that the instructions given to the jury "effectively directed the jurors not to consider the absence of certain evidence," which he contends relieved the Government of meeting its burden of proof, thereby denying Petitioner a fair trial. Pet'r's Br. 7. Petitioner specifically challenges the following instruction: "During the trial you heard testimony of witnesses and argument by counsel, but the government did not use specific investigative technique, such as fingerprint analysis, DNA analysis, or the use of recording devices." Trial Tr. 84:22-85:1, June 8, 2011. Petitioner takes issue with this instruction because he contends that the Government did use fingerprint analysis and DNA analysis, but simply could not find any evidence linking Petitioner to the charges using these investigative methods. Pet'r's Br. 7. Petitioner believes that this instruction unfairly encouraged the jury to consider that no testing was actually done. <u>Id.</u>

        Whether or not the Government had taken such investigative measures, this evidence was not a part of the prosecution's case against Petitioner. As the Government correctly points out, the prosecution's lack of DNA or

fingerprint evidence was actually a part of the defense's argument. Gov't's Br. 19. While Petitioner claims that this instruction directed the jurors "not to consider the absence of certain evidence," the instruction specifically counseled the jury to consider the prosecution's lack of investigative techniques in deciding whether the Government has met its burden of proof, and urged the jury to "look to all of the evidence or lack of evidence in deciding whether the defendant is guilty." Trial Tr. 85:2-6, June 8, 2011. This instruction did not negate the defense's case, as Petitioner claims, but instead compelled the jury to decide whether the Government had met its burden despite not having produced specific evidence from fingerprint or DNA analysis.

It did not matter whether or not the Government actually conducted the investigative techniques, because this evidence was not used in its case against Petitioner. The jury found sufficient evidence to convict Petitioner despite the lack of investigative evidence. The jury instruction, coming directly from the Third Circuit's Model Jury Instructions § 4.14, in no way prejudiced Petitioner, and counsel was not ineffective for deciding not to object to it. Accordingly, this claim for relief under § 2255 cannot proceed.

       f.    <u>Failure to object to Agent Oswaldo Toledo
sitting at prosecution table and failure to
seek an adverse instruction for intentional
destruction of notes</u>

Petitioner contends that it was inappropriate for
Agent Toledo to be seated at the prosecution table because doing
so "wrapped Agent Toledo in the authority of the
[p]rosecution[']s [o]ffice" and enhanced his credibility as a
witness in the eyes of the jury. Pet'r's Br. 8. Generally,
witnesses may be excluded from hearing the testimony of other
witnesses. Fed. R. Evid. 615. However, there is an exception for
"an officer or employee of a party that is not a natural person,
after being designated as the party's representative by its
attorney." Rule 615(b). Case agents fall within this exception.
<u>See</u> <u>United States v. Gonzalez</u>, 918 F.2d 1129, 1138 (3d Cir.
1990); Rule 615. As the Government notes, Agent Toledo was the
case agent in this case. Gov't's Br. 19. As such, he was called
upon to assist the prosecution, as well as to testify as a
witness at trial. Agent Toledo was allowed to sit at the
prosecution table throughout the trial, and thus any objection
to his presence would have failed. Therefore, Petitioner was in
no way prejudiced by defense counsel's failure to make this
objection.

Petitioner further argues that defense counsel failed
to seek an adverse inference instruction after Agent Toledo

31

testified to having lost the notes regarding Petitioner's investigation, despite having been notified to save all notes. Pet'r's Br. 8. An adverse inference instruction is warranted when evidence relevant to a case is (1) in a party's possession, and (2) willfully withheld or suppressed by that party. Gumbs v. Int'l Harvester, Inc., 718 F.2d 88, 96 (3d Cir. 1983). "[N]o unfavorable inference arises when the circumstances indicate that the document or article in question has been lost or accidentally destroyed . . . ." Id.

When questioned by defense counsel about the notes, Agent Toledo stated that the notes were misplaced after the report was done and that notes often disappear after a report is completed if they are not placed within the case file. Trial Tr. 6:21-7:10, June 7, 2011. There is no evidence that Agent Toledo willfully or intentionally lost or destroyed the notes on Petitioner's investigation in order to suppress that evidence. Rather, the record suggests that the notes were lost accidentally, and thus an adverse inference instruction would not have been appropriate in this case. Therefore, defense counsel's failure to seek such instruction did not prejudice Petitioner and this claim for relief under § 2255 must fail.

g.   Cumulative errors

Petitioner argues that even if none of his claims of ineffective assistance of trial counsel rises to the level of a reversible error, the combined errors collectively infected the trial with unfairness substantial enough that his due process rights were violated. Pet'r's Br. 8-9. Even taken cumulatively, however, the alleged instances of ineffective assistance of trial counsel do not reach a level at which they were reasonably likely to have altered the outcome of Petitioner's case. See Strickland, 466 U.S. at 694.

As discussed above, Petitioner has not shown that trial counsel's performance--with respect to the failures to call Brower and Vasquez as witnesses, to object to the Confrontation Clause violation, to object to alleged prosecutorial misconduct, to object to the jury instruction on investigative techniques, or to object to Agent Toledo's presence at the prosecution table--was deficient in any respect, much less that it prejudiced Petitioner's case. See id. at 687. Moreover, given the strong weight of the evidence to convict Petitioner presented at trial, the less-than-minimal impact of each of Petitioner's claims would not individually or cumulatively have altered the outcome of the trial. For this reason, Petitioner's claim for relief under § 2255 cannot succeed on this ground.

33

2.   <u>Appellate Counsel</u>

a.   <u>Failure to get reconsideration motion</u>
     <u>adjudicated</u>

Petitioner contends that appellate counsel was
ineffective for failing to challenge the Court's ruling that it
lacked jurisdiction after Petitioner filed his appeal. Pet'r's
Br. 9. The Court denied Petitioner's post-trial motion on the
grounds that it no longer had jurisdiction after Petitioner
filed an appeal with the Third Circuit, thereby divesting
jurisdiction from the District Court and conferring it upon the
Court of Appeals. ECF Nos. 122, 139.

The District Court's decision to dismiss the post-
trial motions for lack of jurisdiction was proper. See Griggs v.
Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982) ("The
filing of a notice of appeal is an event of jurisdictional
significance--it confers jurisdiction on the court of appeals
and divests the district court of its control over those aspects
of the case involved in the appeal."). Indeed, the Third Circuit
affirmed the District Court's decision. ECF No. 147. Petitioner
apparently believes that the notice of appeal had no effect
because it was filed during the pendency of a post-trial motion.
Pet'r's Br. 9. But this belief is incorrect and does not alter
the conclusion that the District Court appropriately dismissed
the post-trial motion for lack of jurisdiction. Appellate

34

counsel did not err by failing to object, and Petitioner did not suffer any prejudice thereby. Accordingly, this claim for relief under § 2255 must fail.

### b.   Failure to appeal all instances of prosecutorial misconduct

Petitioner argues that the same objection to prosecutorial misconduct that trial counsel failed to raise could have been brought on appeal and that appellate counsel was ineffective for failing to do so. As discussed previously, there were no actual instances of prosecutorial misconduct on which either trial counsel could have objected or appellate counsel could have appealed. Therefore, Petitioner was in no way prejudiced by appellate counsel's failure to make such an objection. It follows that this claim for relief under § 2255 must fail.[5]

### c.   Failure to appeal two-point enhancement for obstruction of justice

Petitioner argues that the two-point enhancement added to his sentence, pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 3C1.1, was improper and that appellate counsel was ineffective by failing to object to the enhancement. A defendant who testifies at trial commits perjury within U.S.S.G.

---

[5]   For an analysis of each individual prosecutorial misconduct claim that Petitioner raises and the reasons that each individual claim fails, see the applicable subsection above.

§ 3C1.1 if he "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94 (1993). The Court applied the two-point enhancement against Petitioner after finding that his testimony denying the possession of the gun, cocaine, coke, and marijuana were intentionally false statements made under oath, thereby engaging in willful obstruction of justice through his testimony. Sentencing Hr'g Tr. 17:2-10, Oct. 28, 2011, ECF No. 148. Petitioner contends that this was an improper and objectionable enhancement to his sentence because the Court's only evidence that his testimony was false was based on the jury's determination that he was guilty for the charges that he had denied at testimony. Pet'r's Reply Br. 8.

In order to find a defendant guilty of perjury, and thus warranting the obstruction-of-justice sentence enhancement, a court must find, by "clear and convincing evidence," that the defendant bore false testimony with intent to deceive. United States v. Fiorelli, 133 F.3d 218, 225 (1998).[6] Petitioner argues

---

[6]     Petitioner relies on United States v. Arnold, 106 F.3d 37 (3d Cir. 1997), abrogated on other grounds by Texas v. Cobb, 532 U.S. 162 (2001), which stands for the proposition that a § 3C1.1 enhancement requires the Government to meet a higher standard of proof than preponderance of the evidence. Id. at 44. The Arnold court derived this standard from the Application Note after § 3C1.1, which stated that the evidence must be viewed in the light most favorable to the defendant. Id. While Petitioner

that the Court improperly relied solely on the jury's determination of his guilt to find that he had committed perjury in his denial of the charges. Pet'r's Reply Br. 8. It is not improper to use the factual determinations of the jury for "laying . . . the foundation for a § 3C1.1 enhancement," provided that "there [is] no question but that the relevant finding was necessarily made by the jury." Fiorelli, 133 F.3d at 225. In his testimony, Petitioner took the stand and expressly denied possession of marijuana, cocaine, crack, and the firearm. The jury determined, based on the evidence presented at trial, that he was guilty of possessing each of those items. There is no question that the jury's finding of possession on each charge directly contradicts Petitioner's own testimony that he did not possess the contraband. Therefore, the jury's finding can

---

argues that the Court failed to view the evidence in the light most favorable to him, and therefore ran afoul of Arnold, the Application Note after § 3C1.1 was amended subsequent to the Arnold decision and no longer contains this language. The Application Note to § 3C1.1 now no longer requires courts to view the evidence in the light most favorable to the defendant, but instead admonishes the, to be "cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." U.S.S.G. § 3C1.1 cmt. 2 (2014). In Petitioner's testimony he denied possessing crack, marijuana, cocaine, and the gun found in his home. Based on the Court's independent review of the record, the Court determined that this denial was not a result of confusion, mistake or faulty memory. Sentencing Hr'g Tr. 16:16-24.

appropriately lay the foundation for a sentence enhancement under § 3C1.1.

In granting this enhancement, the Court did not rely on the jury's conviction alone, but made an independent review of the record to determine that there was sufficient evidence to convict the defendant. Mem. Op. 29 (Oct. 28, 2011). Based on Petitioner's flat denial of possession, the jury's conviction on each of the possession charges, and the Court's independent evaluation of the record, the Court determined that "the defendant testified falsely on the stand, and that under those circumstances the testimony constituted a willful impediment and/or obstruction of justice in this case." Sentencing Hr'g Tr. 17:7-10.

Appellate counsel reasonably concluded that it was fruitless to appeal a ruling on which the Court had followed the appropriate standard and found clear and convincing evidence that Petitioner had warranted the enhancement through his false testimony, and to which trial counsel had already objected unsuccessfully. Appellate counsel did not fall below a standard of professional conduct in choosing not to raise such an objection and there is no evidence produced by Petitioner to indicate that the outcome of the sentencing would have been different had this objection been raised on appeal. Therefore, this claim for relief under § 2255 cannot proceed.

## IV.   CERTIFICATE OF APPEALABILITY

When a court issues a final order denying a § 2255 motion, it must also decide whether to issue a certificate of appealability. Such a certificate "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Pabon v. Mahanoy, 654 F.3d 385, 393 (3d Cir. 2011) (quoting Miller-El v. Cockrell, 537 U.S. 322, 327 (2003)). Here, Petitioner has not made such a showing for any of the claims raised in his § 2255 motion. The Court therefore declines to issue a certificate of appealability.

## V.   CONCLUSION

For the foregoing reasons, the Court will deny Petitioner's motion to vacate, set aside, or correct his sentence under § 2255, and will not issue a certificate of appeal. An appropriate order follows.